Case number 175563, Lashawn Williams v. Don Godby Oral argument not to exceed 15 minutes per side Mr. Burns for the appellant Your Honors, good morning. Robert Burns of the Nashville Bar. I've reserved three minutes for rebuttal. I represent Officer Don Godby on this qualified immunity appeal. Officer Godby is a member of the Smyrna, Tennessee Police Department. We filed this appeal because we think this case involves some important issues related to the application of qualified immunity to officers in the field. In particular, their ability, their right, and their duty to rely on information and to follow orders from other officers as that relates to the use of physical force. For some background and context, I first want to touch on the District Court's opinion, which we believe got us here today. We think that the District Court now resigned Judge Kevin Sharp, respectfully got a couple of things wrong, and also respectfully on his way out of office. This is supposition on my part, but I think that perhaps in Judge Sharp's haste to perhaps to wrap cases up and get off the bench, there were a couple of errors with the opinion that addressed our motion for summary judgment that I think were significant. First, we contend that Judge Sharp used the wrong standard in analyzing the qualified immunity defense in this case. He looked at this case and ruled on the basis of what, or the perspective of what a reasonable jury could find. I think it's well established in the circuit, and we can all agree that that is not the proper standard. That issue was addressed by this court. Judge Rogers writing for the court, Judge Batchelder, part of the opinion in the Stephan v. Hennig decision from January 19 of last year, in which you all addressed a very, very similar set of circumstances. That was a use of force case, but you found that the Eastern District of Michigan in that case, like the District Court here, in this case, the Middle District, misapplied the three Graham factors. Rather than looking at it from the perspective of what was objectively reasonable for an officer under the particular circumstances involving the officer, the District Court and Stephan looked at it from the perspective of what a reasonable jury would do. Doesn't that conflate the two inquiries? One is a factual inquiry as to what actually happened. I disagree. I know that plaintiffs have argued that there should not be jurisdiction in this case on the basis of a factual dispute. But I'd like to first let me, if I can, address... You don't want to answer my question? No, I'll be happy to answer your question. My question is, isn't there a difference between... In essence, you have to do both. You have to figure out whether there are the facts which would amount to an objective from the perspective of the policeman. That's in the facts that a jury then has to find. And so at the summary judgment stage, the District Court has to determine whether a reasonable juror could conclude that the objective facts from the perspective of the policeman were thus and such. At some point, when deciding a summary judgment motion, the District Court has to decide something on the nature of, would a reasonable juror be able to come to this conclusion? But the nature of the conclusion is what you're talking about and what we were talking about in that previous case. So I just wonder whether it's an argument that sort of misses if you say that the District Court shouldn't have used language like a reasonable juror could conclude. See what I'm saying? Yeah, I do, and I think your point was that the analysis process can get somewhat conflated, I think. I'm not saying they're conflated. I'm saying they're distinct. One is, what is the standard, or what is the fact that the jury is supposed to be looking for? And the other is, could a reasonable juror find that fact? I'm not conflating anything. Those are different, right? One deals with the other. Why can't we interpret what the District Court said as a distinguished judge? He's gone, but having done exactly that. Respectfully, I disagree with the District Court's interpretation of the record that was before him at the time. But that's not, according to our presence, something we review, is to review. Unless there's a videotape or something like that, we defer to the District Court's determination of what a reasonable juror could conclude as fact in this case. I don't disagree with that, Judge, but... It's hard to disagree with that, because that's the law, right? I think, well, yes it is, but I think that the issue here is that the District Court on this case did not properly take into account the perspective of the view of the reasonable officer. That's fair. Why not? Let me ask you that. Is your client willing to concede the facts as alleged by the plaintiff here for the purpose of this interlocutory appeal? Well, we have to be, because if we don't, I understand that we get sent back down. Exactly. So you are willing to concede the facts not as your client says the incident happened, but the way the plaintiff says the incident happened. If that's so, how can there not be a genuine issue of material fact that precludes summary judgment? Because one issue that the District Court did not take into account that is not disputed in this case, and it goes to the other prong of the qualified immunity analysis, in that there has been no case law that was presented at the District Court stage or now on the appeal that establishes, that we say even gets to the point of creating a legal issue to argue about, in terms of what clearly established law existed at the time back in October of 2013 when this incident... Well, the law is a police officer cannot use excessive force. That's correct, but the reason what is undisputed in the record in this case, Judge, is that the reason the force was eventually used is because of the involvement of another officer who was not sued. The record in this case shows beyond dispute, this has been admitted to, that the backup officer that came in response to this call, his name is Gary Shoon, was standing at the back of the patrol car observing the interaction between Officer Godbee, my client, and Miss Williams as soon as she got out of the car. Now, I recognize, and I'll concede, that Miss Williams says one thing, Officer Godbee says another thing, but the reason that the force was used in this case is because Shoon gave a command and gave an order to, quote, take her to the ground, and that initiated the process of the physical force being applied in this case that led to her physically going to the ground and her injuring her shoulder. But your client participated in taking her to the ground. He did participate in it, and we say that it's reasonable under these circumstances and that plaintiffs have failed to show any case law that would have put him on notice. She didn't resist arrest. She put her hands behind her back when your client said, put your hands behind your back, I'm going to handcuff you. Now, that's not what your officer says, but you have to concede the facts as alleged by the plaintiff. And so she was, according to her version, she was cooperating, and these two officers pounced on her, threw her to the ground, and broke her clavicle, right? Judge, the legal issue for qualified immunity purposes we submit is whether it was reasonable under these circumstances, and as Ms. Williams demonstrated through her arguments, any case law that would show that it was unreasonable for Officer Godbee to follow the command and react to the order of the other officer on the scene to take her to the ground. It is undisputed in the... The other officer on the scene had said, she's got a little tiny bottle, shoot her. That's different. I understand that. I think that the jury could take, you all potentially could rule as a matter of law if those are the undisputed facts,  and the idea of an officer following a command that appears to be plainly unreasonable, again though, they have to come forward with a case to suggest that, and we argue that under the particularized facts of this case, they have not met that burden, they have not come close to that, and this raises some serious questions under these facts as to what duty and what responsibility an officer in Godbee's position should be. Again, I recognize, and certainly we can debate the merits, as I'm sure plaintiff's counsel will, in terms of what actually happened, but the pure legal issue in this case, the reason that we're here, is the qualified immunity analysis and their burden to come forward with the case, which they have not done. They did not come close to doing that at the summary judgment stage. At best, in their brief, in response to my motion, all that... Can I ask another question? It's a factual question. Yes. Shoon was called as backup, right? Correct. Refresh my memory on the facts. What made Shoon an officer in some kind of a superior position to Godbee? Why, your position apparently is, whatever Shoon told Godbee to do, he had to do, because he was ordered to do it. Yes. Why is that so? Who was Shoon? Shoon was another officer. He was a sergeant, if I'm not mistaken, at the time. He was a superior officer. Okay, that's my question. In terms of rank, and he was called for backup. He responded to that call, and pursuant to their training, under these circumstances, where you have... There should be no dispute that she was resisting verbally, actively, from about the point in time that Godbee got there. It's undisputed that she was intoxicated at a blood alcohol of .159. Shoon was there observing these actions. Shoon's first initial concern was what actions was the driver going to take. He couldn't even determine if the driver was male or female. The driver is a much larger person than what Miss Williams was. As he's standing at the back of the car, he sees the interaction, and Shoon says, I saw Miss Williams start to react and start to pull away and start to resist. That's what prompted his command, his statement, his order. However we want to characterize that in terms of get her to the ground. I submit that... I have a question. I know your time's up. I have two questions. Would you... Yeah, go ahead. Is that all right? Yes, go ahead. Thank you. I really have questions now when your time is short about what you're arguing. You seem to be arguing primarily today that there's no cases which say that one officer can, in certain circumstances, decline to do what another officer tells them to do, right? Under these facts, yes. When you get up on rebuttal, if you could just point to the pages of your brief where you're making that legal argument about being told by someone else, not in a statement of facts, but in the argument. Secondly, you have another claim here, which is a false imprisonment claim under Tennessee state law. Are you arguing qualified immunity, federal qualified immunity, or are you arguing state immunity, state law immunity? I think our argument was postured more under federal qualified immunity. So you're not making an argument based on state law immunity? I don't think that we per se argued. I don't want any qualifiers. I don't know whether you're arguing it or whether you're not. No, we're arguing qualified immunity. Qualified immunity. So if there's some case which says there's no qualified immunity for state law claims, you would just lose on that, right? If I could check my brief and address that on rebuttal before I commit to that. Thank you. Thank you. May it please the court, I'm Terry Fann from the Murfreesboro, Tennessee Bar. My partner Ben Parsley and I represent Ms. LaShawn Williams. And, judges, respectfully, I'll start with Officer Schoon. If I may, I'll just jump right into Officer Schoon because we dispute the fact that I don't believe the record bears out that he was a sergeant. But I think most importantly regarding Officer Schoon, who shows up, and I didn't understand that that was, from the depositions from the record, that that was the only reason that Ms. Williams was taken in and her collarbone broken. What helps us in this case is the 11-minute audio tape by Officer Godby. His video is not focused, but the audio is. For 11 minutes, he interrogates and questions Ms. Williams and the person in the driver's seat, Ms. Loving. Officer Schoon was there less than two minutes when this takedown occurred. So Officer Schoon was not in a superior position. Officer Schoon's video is available in this record, as is his audio, but his audio was blank because he couldn't hear anything that was going on between the occupants of that vehicle or between Officer Godby and Ms. Williams. In fact, when Officer Schoon appeared and he stopped and the video was very clear, Officer Godby was already on the passenger side of the vehicle talking to Ms. Williams. And Ms. Williams was compliant. We dispute, and I think for the purposes of this interlocutor appeal, it can't be contested that she resisted arrest. She was compliant. The appellant wants to argue that she was out of control, that she was obviously intoxicated, and we dispute that. And we believe that the audio and the video supports the fact that she was coherent. What did the district court say about whether there was enough for a jury to find one way or the other? The district court found that there was a jury question, that there was enough for a jury. The jury finds that. We're bound by that determination, correct? Yes, sir. I think so. Really, you don't need to argue whether the district court was correct on an issue of whether a fact occurred. We're bound by it, even if it was wrong. I guess I was raising that because there was a question that whether or not she resisted. So I would submit to the court that in rebuttal to the argument presented that she resisted, that she was obviously intoxicated, they like to point out her blood alcohol test. But, of course, that's hindsight. That was determined later. She was able to answer questions, and she didn't resist. So in the video, the audio shows that when she was asked to get out of the car, she complied. When she was asked to hand her telephone over, she complied. When she was asked to turn around, she might have complained, but she complied. The discussions that the appellant likes to raise about Ms. Williams, who was sitting in her private parking lot in a private vehicle, were discussions between her and her co-worker. Ms. Williams and Ms. Loving worked for a vendor at the Nissan plant in a factory. They had worked the least desirable shift you can work. They had worked all night. They were relaxing that morning. They talked, and it's on the video and the audio, about the stresses of their job. They were relaxing. This morning, to them, after working 11 hours, was like a Friday night to a lot of people. The officer, Godbee, had no reason to exercise the excessive force on her once she got out of the vehicle because she complied. The court analyzed the gram factors. The court, and as this court has pointed out, the issue of whether there are questions of fact when there is summary judgment, the district court properly analyzed those, and they were intertwined, but there are those questions of fact, which the court properly ruled upon. We submit that the court properly ruled after considering all of the gram factors and even going through the segmenting analysis. The clearly established law we would submit, as the district court obviously found, is that obviously you can't use that type of force to take down a person and break their collarbone when they have not committed a crime. We think that is clearly established law in 2013. It's important that I would submit to this court that Officer Godbee's testimony is that he asked her to put her hands behind her back, which she complied, and when he went to put the cuffs on her, he was not doing it because he was going to arrest her. His testimony was that he was going to put the cuffs on her so he could search the car looking for whatever he was looking for for his own safety. He never communicated that to Ms. Williams, never communicated that to her, and we would submit that he, on his own regard, took down Ms. Williams with so much force to break her collarbone without even considering what Officer Schoon said. Again, Officer Schoon was not in a superior position. Was she handcuffed when he took her down? I'm sorry? Was she handcuffed when he took her down? No, sir. He took her down and placed the cuffs on her as she hit the ground. So from his perspective, he had to take her down in order to put the handcuffs on, and from her perspective, he didn't need to take her down to put the handcuffs on or he shouldn't have put the handcuffs on? He did not need to. Did the district court say whether he needed to or not? I don't think the district court addressed whether he needed to or not. Is it an important issue? Whether he needed to take her down to put the handcuffs on? I'm trying to get at the nature of the use of force here. The use of force occurred, and I guess I'm trying to make sure I'm with you, Judge Rogers. The use of force occurred when he decided to put the handcuffs on her, but she was not under arrest. I would respectfully submit he didn't need to take her down to put the handcuffs on because she said, don't arrest me, and he could have explained to her, I'm not arresting you. I'm going to put the handcuffs on until it was not necessary to take her down. Then you need to find that it's clearly a violation of clearly established law to handcuff someone when you don't need to handcuff them in order to search a car. It doesn't have to do with the force you used. It just has to do with whether you handcuffed them, but you're not arguing that. No, sir, I'm not arguing that. You're talking about assuming that you could handcuff them. It was too forceful the way they did it? Yes, sir. The use of force on the takedown is what caused her to have the broken clavicle. There are arguments that the appellant made that she was resisting and assaulting and, again, taking the facts that she gives them. The only time she kicked was when they were laying on top of her, and at that point even the video and the audio show she's writhing in pain, complaining about a shoulder, not knowing it was actually her clavicle that was broken. We would respectfully submit to this court that the district court performed the proper analysis that qualified immunity is not available to Officer Gobby under this set of facts and that we did, if it pleases the court, submit several cases in our brief regarding the clearly established law, and, again, to the point that it is, as Judge Gilman pointed out, obvious that you cannot use the type of force that Officer Gobby used to takedown Ms. Williams. The cases which we cited we submit show areas where takedowns occur that are much worse, much more egregious than the facts regarding Ms. Williams on this day in October in Smyrna. The appellate cites the Steffen v. Hining case, and we believe that's clearly distinguishable. There are seven important factual distinguishments in that case, and this is where the case occurred at the Taekwondo that Judge Rogers authored. The biggest facts in that case that we would show are distinguishable are, number one, the paramedics already knew about the plaintiff in that case. They had already had issues with her and her seizures. And, number two, the paramedics also talked to her. They said, stop fighting, before they applied the force. Those things are very distinguishable in the LaShawn Williams case. They had no knowledge. She was not doing anything wrong. And there was no communication. One of the big issues with Officer Gobby is there was no communication. Of course, in the Steffen case, the plaintiff was a second degree black belt, yelled obscenities through her phone. In this case, Ms. Williams did none of those things. In fact, we would expect to submit the audio and video shows that she complied, complied, complied, answered his questions. She wasn't excited about being interrogated by the police officer. She was a little worried about how it would affect her ability to stay at that apartment. We respectfully request that . . . She was kind of feisty and offensive, wasn't she?  She was kind of feisty and offensive, wasn't she? She was kind of feisty, maybe offensive. I think the words that were used were pissed off. But in the context of that, Judge Rogers, she was . . . I mean, you have to argue what actually is there. I mean, it's not a case where she said, sure, what do you want? That's right. Your argument is that she was offensive, but it doesn't matter. That's right. She wasn't threatening. She wasn't threatening. So we would ask the court to affirm the district court's ruling that there is not qualified immunity in this case and that summary judgment for Officer Gobby is improper. We respectfully request on the issue of the false imprisonment, we believe that we have met the initial elements of the false imprisonment claim. And that that case also should be allowed to return to the district court for trial. Thank you. Thank you, Counsel. Rebuttal? Thank you. A couple of points. Judge Rogers, in response to your question about Officer Shoon and his involvement, that was touched on, I know, on page 14 of our leading brief, page 15 and 17 of the reply brief. I'm looking at the blue brief. That's page 14? Yes. Is that part of your argument, or is that the? It's part of the factual section. You don't really make that. That's your key legal argument, and it's not made in your argument section. Is that right? I apologize. As I was slipping through the rest of my brief, I did not provide. I could not find the site that I was looking for. It is referenced in the reply brief, though, at 15 and 17, at pages 15 and 17. A couple of points to follow up on from Mr. Phan. I also asked you about the state immunity. Yes. You don't argue state immunity. No, we argue federal immunity. Not arguing state immunity. Correct. We reference some common law state immunity cases, but it was tied to the federal qualified immunity analysis. Thank you. I appreciate your candor. Yes, sir. I think it's important to note that there was an establishment of probable cause for the three charges that she was arrested for, which was public intoxication, resisting arrest, and assault. That was at a preliminary hearing prior to the time that the state court judge, Judge Bragg, held the suppression hearing. In that suppression hearing, and this relates to the false imprisonment claim, Judge Bragg granted the motion to suppress the evidence, which was the alcoholic bottles. I think it's important to note two points for qualified immunity. The standard under Tennessee law for seizure is different than that under federal law, and I think that that raises a question as to whether or not an officer in Godby's position should be expected to know that. Again, also the establishment of probable cause on those three charges. Two final points. One, we submit that the cases that plaintiff relied upon on this appeal to try to show that there is clearly established law under these particular facts, and not at a generalized high level, do not come close to addressing what we have here. The second thing is plaintiff throughout this case has wanted to characterize Ms. Williams as being cooperative, not out of control, all of that. There is the dash cam audio video. You can listen to it. There are extensive responses to our statements of undisputed material facts, many of which were admitted. There is no question that this lady was extremely upset, agitated. Her friend told her repeatedly, Sean, calm down, let him do his job. Her mother at the end of this whole proceeding came out and apologized at the police department. There is no just case authority for the idea that somebody who is agitated, mouthy, seriously ticked off, and making that very plain, that under those circumstances, it's okay to throw her on the ground with enough force and violence to break her clavicle. Judge, again, I go back to the idea of these particularized facts, putting in the involvement of Officer Shoon with the command to take her to the ground. Respectfully, we haven't found a case that says that, so we make the argument that under these facts, the law was not so clearly established. They didn't come forward with a case. We researched this heavily. I can't find a case that's directly on point. I think that means qualified immunity. Thank you.